**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., ) | No. CV-09-1806-PHX-GMS |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Royal Albert's Palace, Inc., a New Jersey ) corporation, ) | |
| Defendant. ) | |

Pending before the Court are a Motion for Summary Judgment[1] (Doc. 34) and Motion to Strike (Doc. 40), filed by Plaintiff Best Western International ("Best Western"), and a Motion to Amend/Correct (Doc. 42) filed by Defendant Royal Albert's Palace ("Royal Albert's"). For the following reasons, the Court grants Plaintiff's Motion for Summary Judgment and Motion to Strike, and denies Defendant's Motion to Amend/Correct.

**BACKGROUND**

Best Western is a non-profit corporation which operates as a membership organization consisting of individually owned and operated hotels (i.e., its members). The rights and duties of Best Western and its members are created and governed by a membership

---

[1] Plaintiff's Motion for Summary Judgment on counts one through three of its Complaint is more accurately a Motion for Partial Summary Judgment because counts four through nine of its Complaint remain.

1 agreement, which incorporates by reference certain bylaws and rules and regulations.
2 Members are authorized to use Best Western's worldwide reservation system and worldwide
3 marketing campaigns and have the option to participate in collective purchasing of hotel
4 equipment, furnishings and supplies. Best Western members are also authorized to use the
5 Best Western Marks in connection with their hotel pursuant to a limited, non-exclusive
6 license, which is set forth in the Membership Agreement. The Agreement also permits the
7 Best Western Board of Directors to terminate a member hotel for failure to meet certain
8 quality and design standards.

9 On September 27, 2004, Royal Albert's, a New Jersey corporation, and Albert Jasani
10 jointly executed and delivered to Best Western a Membership Application and Agreement
11 with respect to the Palace Hotel in Ford, New Jersey. (Doc. 36, Ex. A).  The Agreement
12 identifies Royal Albert's as the owner or lessee of the hotel and Albert Jasani as the voting
13 member. (*Id*.).  The Membership Agreement states, "[t]he owner or lessee and the voting
14 member are each personally responsible, jointly and severally, for all obligations to Best
15 Western arising under this membership application and agreement or relating to the
16 affiliation of the hotel with Best Western." (*Id*. at ¶ 3). The Agreement further provides that
17 "[t]he undersigned owner or lessee appoints the undersigned voting member, and any
18 substituted voting member, as its attorney-in-fact with full power and authority to bind owner
19 or lessee in any and all agreements and liabilities which voting member may enter into or
20 undertake to Best Western in connection with the Hotel." (*Id*. at ¶ 29).  Best Western
21 accepted the application and granted Royal Albert's and Albert Jasani membership in the
22 Best Western organization.[2] On June 24, 2005, Albert Jasani submitted to Best Western an
23 "Application for Change in Voting Member." The application indicates that Raj Jasani,
24 Albert Jasani's nephew, is the new proposed Voting Member. (Doc. 1, Ex. 1). On March 26,
25 2009, Best Western terminated Defendant's membership "for failure to comply with Best

---

[2] The Membership Agreement is governed and construed under the laws of Arizona. (Doc. 36, Ex. A, ¶ 37).

- 2 -

1  Western quality standards at their hotel and for failure to comply with Best Western Bylaws,
2  and Rules and Regulations, with respect to Hotel property." (Doc. 36).

3  Best Western filed a Complaint against Royal Albert's and Raj Jasani on August 31,
4  2009. The Complaint asserts nine claims: breach of contract, open account, breach of
5  contract – post-termination use of trademarks, federal trademark infringement, false
6  designation of origin and unfair competition, federal trademark dilution, unfair competition
7  under Arizona law, trademark dilution under Arizona law, and common law trademark
8  infringement. Default judgment was entered against Defendant Raj Jasani on counts one
9  through three of the Complaint on February 24, 2010. (Doc. 31). Plaintiff now moves for
10 summary judgment against Defendant Royal Albert's on those same counts.

**DISCUSSION**

**I. Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

**II. Plaintiff's Summary Judgment Motion**

Best Western seeks summary judgment on counts one through three of its Complaint.

- 3 -

Counts one and two seek recovery for breach of contract and breach of open account with respect to amounts Defendant agreed to pay in the parties' membership agreement, but has refused to pay. (Doc. 1, ¶ 34–43). Count three seeks to recover liquidated damages based on Defendant's continued use of Best Western marks after the termination of the membership agreement. (*Id*. at ¶ 44–48).

### A. Breach of Contract

To prove a breach of contract claim under Arizona law, Plaintiff must establish the existence of a contract, breach thereof, and resulting damages. *Clark v. Compania Ganadera De Cananea*, 95 Ariz. 90, 94, 387 P.2d, 235, 238 (1963); *see also Commercial Cornice & Millwork, Inc. v. Camel Constr. Servs. Corp.*, 154 Ariz. 34, 38, 739 P.2d 1351, 1355 (App. 1987) (citing *City of Tuscon v. Superior Ct.*, 116 Ariz. 322, 324, 569 P.2d 264, 266 (App. 1977)). It is undisputed that the parties entered into a contract, namely the Membership Agreement, on September 27, 2004. (Doc. 39-2). Plaintiff contends that Royal Albert's breached the Membership Agreement by failing to pay to Best Western the amounts due as required by that Agreement, thereby resulting in damages. In its Response, Defendant argues that it was released under the contract because the Application for Change in Voting Member constituted a release and transfer of Royal Albert's obligations under the Membership Agreement. (Doc. 38). This argument fails for several reasons.

As Plaintiff contends, Defendant forfeited its defense of release on the basis of the Application for Change in Voting Member by failing to raise this affirmative defense in its Answer to the Complaint. *See Cellular 101, Inc. v. Channel Commc'ns, Inc*., 539 F.3d 1150, 1155 (9th Cir. 2008); *Metcalf v. Golden*, 488 F.3d 836, 841 (9th Cir. 2007) (the defense of release is generally waived if not asserted in the answer to a complaint). In its Answer, Defendant provides, with some degree of specificity, three affirmative defenses related to discharge.[3] However, all three of these affirmative defenses are based on different

---

[3] Defendant's affirmative defenses include the following: (1) "The prior and material breaches of contract and of the implied covenant of good faith and fair dealing by plaintiff

- 4 -

circumstances than those asserted in Defendant's Answer. Accordingly, Defendant forfeited this affirmative defense by failing to include it in its Answer.

Even if Defendant had not forfeited its defense of release and discharge, the defense has no merit where the Application for Change in Voting Member, on its face, and by its plain text, directly contradicts Defendant's proffered interpretation. The relevant portion of the Application states:

> The above current Voting Member and owner/lessee requests that in connection with the above-referenced property [Best Western Royal Albert's Palace], the undersigned Proposed New Voting Member [Raj Jasani] be substituted for the existing voting member [Albert Jasani] and that a new membership be issued in the name of the Proposed New Voting Member. The undersigned agrees that if this Application is approved by Best Western, the Membership Application and Agreement . . . shall continue to apply as though fully re-executed by the undersigned and the Proposed New Voting Member. . . . *The undersigned owner or lessee certifies that there is no change in owners or lessees of the property*. (Doc. 1, Ex. 1) (emphasis added).

Nevertheless, in his late and unsigned declaration, Albert Jasani contends that it was his understanding that by signing the Application for Change in Voting Member he was transferring all of his and his company's rights and obligations under the Membership Agreement to a third party. (Doc. 39, ¶ 12). Specifically, Jasani states, "I asked Best Western what I needed to do to fully sever my relationship with the hotel business in all respects" and "I made it clear to Best Western that in transferring the membership, neither I nor my corporation wished to have any further involvement, legal or otherwise, with the operations of the hotel," and that "Best Western responded telling me that I would be able to achieve my goals above by following the procedures for a Change in Membership." (*Id*. at ¶ 6–8).

In accordance with Local Rule 7.2(m), the Court grants Plaintiff's motion to strike Albert Jasani's late and unsigned affidavit for failure to comply with Federal Rule of Civil

---

discharged any obligation on the part of defendants to further perform and bars plaintiff's claims for relief." (2) "The conduct of plaintiff made it impossible or difficult for defendants to perform and discharged any obligation on the part of defendants to perform the obligations sued upon."(3) "The defendant was discharged from any further obligation to perform by the failure of the consideration for its contracts."

- 5 -

1  Procedure 56(e) and 28 U.S.C. § 1746.[4]  However, even assuming the late and unsigned
2  affidavit should not be stricken, it would not affect the outcome of the case because
3  Defendant's attempt to raise an issue of fact about the plain meaning of the Application for
4  Change in Voting Member through Jasani's affidavit is inadmissible under Arizona's rules
5  of contract interpretation. Under Arizona law, before a party can introduce extrinsic evidence
6  to aid in the interpretation of a written document, the proponent of the extrinsic evidence
7  must identify language within the writing itself that is susceptible of the interpretation
8  supported by the extrinsic evidence offered. *See Long v. City of Glendale*, 208 Ariz. 319,
9  328–29, 93 P.3d 519, 528–29 (App. 2004) (citing *Taylor v. State Farm Mut. Auto. Ins. Co.*,
10 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993)). Defendant does not point to any language
11 in the Application for Change in Voting Member that could be interpreted to constitute a
12 release of Royal Albert's. Indeed, Defendant cannot do so where the plain language of the
13 Application, which clearly states that it does not constitute a change in ownership, is directly
14 contradictory. *See U.S. West Commc'n, Inc. v. Ariz. Corp. Comm'n*, 185 Ariz 277, 280, 915
15 P.2d 1232, 1235 (App. 1996) (rejecting extrinsic evidence proffered because "the agreement
16 contained no language to support the [proposed] interpretation and the meaning of the
17 contract must be determined as a matter of law"). Because Defendant cannot, and does not,
18 point to any language within the Application itself that is susceptible to an interpretation that
19 the Application constitutes a release of Royal Albert's, Defendant's attempt to introduce
20 extrinsic evidence to the effect that Albert Jasani received the Application for Change in
21 Voting Member from Best Western after asking what was necessary to sever all relationships
22 with them is inadmissible. Accordingly, Defendant has failed to set forth any admissible
23 evidence which raises an issue of fact as to whether the Application should be construed as

---

[4] Accordingly, the Court denies Defendant's Motion to Amend/Correct Albert Jasani's late and unsigned affidavit. (Doc. 42).

- 6 -

1 a release.[5] *See Anderson*, 477 U.S. at 250. Thus, we determine that the interpretation
2 advanced by Defendant fails as a matter of law, and that Royal Albert's was not released
3 from the terms of the contract with Best Western.
4     Moreover, Defendant offers no evidence of having paid Best Western the amounts
5 Plaintiff alleges are due and owing as required by the Membership Agreement. Plaintiff's
6 contention is supported by the affidavit of Cheryl Pollack, Director of Member Care and
7 Development Administration for Best Western, and billing statements it has submitted which
8 identify the charges to Defendant's account, dates and amounts incurred.[6] (Doc. 36, Ex. B;
9 Doc. 36, ¶ 8–9). Because Defendant has not satisfied its burden of establishing a genuine
10 factual issue with respect to whether it was discharged from the contract by virtue of the
11 Application for Change of Voting member, the Court determines that Defendant was still
12 bound by the terms of the Membership Agreement, and breached that contract by failing to
13 pay its dues, thereby resulting in damages to Best Western. Accordingly, Plaintiff is entitled
14 to summary judgment on its breach of contract claim.

15     **B. Open Account**

16     Best Western alleges to have rendered services and provided supplies on an open
17 account, and in accordance with the Membership Agreement, Defendant was to pay for such
18 services and supplies when due. Plaintiff's contention is supported by billing statements it
19 has submitted, which identify the charges to Defendant's account and dates and amounts
20 incurred, and the Pollack affidavit. (Doc. 36, Ex. B; Doc. 36, ¶ 8–9). Since Defendant has
21 filed no controverting evidence nor any other papers disputing this fact, we are bound to
22 accept the fact that Best Western and Defendant were doing business on an open account

---

[5] Notably, in his declaration, Albert Jasani concedes that because it was his understanding that the portion of the Application for Change in Voting Member which fell outside the box in which he signed only applied to Raj Jasani, he "did not review the remainder of the Transfer Agreement in any detail." (Doc. 44, ¶ 14–15).

[6] Plaintiff alleges that as of August 1, 2009, there was due and owing on Defendant's Best Western account the sum of $75,479.58, plus interest thereon at the rate of 1.5% per month from said date. (Doc. 1; Doc. 36, Ex. B).

basis as true. *See Continental Cas. Co. v. Grabe Brick Co.*, 1 Ariz.App. 214, 217, 401 P.2d 168, 171 (App. 1965). For the reasons discussed with respect to Plaintiff's breach of contract claim, Plaintiff is also entitled to summary judgment with respect to its open account claim.

**C. Breach of Contract – post-termination use of trademarks**

Pursuant to paragraph 22 of the Membership Agreement, upon termination of the license, Defendant had (15) days to remove from public view and cease using all Best Western symbols. (Doc. 36, Ex. A). Best Western terminated Plaintiff's membership on March 26, 2009. (Doc. 36, ¶ 7). Plaintiff contends that after repeated requests, Defendant failed and refused to remove the name, signage and membership mark of "Best Western" from the Hotel property through at least August 11, 2009. Plaintiff's allegation is supported by Pollack's affidavit (Doc. 36), and date-stamped photographs taken on August 11, 2009, which depict the continued use of the Best Western name and logos at the Hotel property. (Doc. 36, Ex. C). Royal Albert's does not point to any specific facts in the record calling into question Best Western's evidence. Best Western, therefore, has established that Defendant continued to use the trademarks after the membership agreement was terminated and the fifteen days had elapsed. Accordingly, Plaintiff is entitled to summary judgment on its breach of contract claim in relation to the post-termination use of trademarks.

Pursuant to Paragraph 24 of the Membership Agreement, Best Western can elect to claim liquidated damages from Defendant in an amount equal to fifteen percent of the mean of Defendant's room rates per day multiplied by the total number of rooms for every day Defendant continued to use the Best Western Marks in excess of the fifteen day period allowed. (Doc. 36, Ex. A). Best Western claims that using this formula, as of August 11, 2009, Defendant owed $180,209.86 in liquidated damages. Defendant alleges that the liquidated damages provision of the Membership Agreement is unenforceable.[7] (Doc. 38).

---

[7] Defendant contests the reasonableness of the liquidated damages formula by relying on an unsigned excerpt of the deposition transcript of Cheryl Pollack from another case, which the Court strikes for failure to comply with Federal Rule of Civil Procedure 30(e). Rule 30(e) requires that Pollack, upon request, have had an opportunity to read and sign the

- 8 -

1   While the traditional role of a liquidated damages clause is to provide "an economical alternative to the costly and lengthy litigation involved in a conventional breach of contract action," "parties to a contract are not free to provide a penalty for its breach." *Pima Savings & Loan Ass'n v. Rampello*, 168 Ariz. 297, 299, 812 P.2d 1115, 1117 (App. 1991). Whether or not a provision for liquidated damages amounts to a penalty depends upon the circumstances of each individual case, and is a question of law for the Court. *Id.* at 300; 812 P.2d at 1118 (citing *Marcam Mortgage Corp. v. Black*, 686 P.2d 575 (Wyo. 1984)). Under Arizona law, an agreement made in advance of a breach is a penalty unless both of two conditions are met: 1) "the amount fixed in the contract must be a reasonable forecast of just compensation for the harm that is caused by the breach", and 2) "the harm that is caused by any breach must be one that is incapable or very difficult of accurate estimation." *Larson-Hegstrom & Assoc., Inc. v. Jeffries*, 145 Ariz. 329, 333, 701 P.2d 587, 591 (App. 1985) (citing RESTATEMENT (SECOND) OF CONTRACTS § 356). In determining if these two criteria have been met, the Court considers "all the facts and circumstances" of the specific case. *Id.* at 333, 701 P.2d at 591. The reasonableness of the amount fixed in the contract and the difficulties of proof of loss are determined at the time the contract is made, not at the time of the breach. *Pima Savings & Loan Ass'n*, 168 Ariz. at 300, 812 P.2d at 1118; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 356, cmt. b (1981). However, the amount retained upon a contract's breach will be considered a penalty if it is unreasonable. *Marshall v. Patzman*, 81 Ariz. 367, 306 P.2d 287 (1957).

Other divisions of this Court, when considering the enforceability of the same liquidated damages clause with respect to the same Plaintiff, the same harm, and the same industry have found the clause to be enforceable. *See Best Western Int'l, Inc. v. Oasis Invs.*, 398 F.Supp.2d 1075, 1081 (D. Ariz. 2005); *Best Western Int'l, Inc. v. Sharda*, 2009 WL 1749458, *5–6 (D. Ariz. 2009). Because Defendant has offered no facts to contest the

---

transcript, which she did not because "the entire transcript of the Cheryl Pollack deposition was never prepared." Doc. 40, Ex. 1; *see also* Doc. 40, Ex. 2.

- 9 -

reasonableness of the liquidated damages provision agreed upon in the Membership Agreement, the Court is not inclined to depart from precedent. Further, it appears to the Court that it would be very difficult for Plaintiff to accurately estimate, at the time the contract was made, the loss suffered due to Defendant's unauthorized use of its trademarks for a period of several months after termination of the Membership Agreement. Accordingly, the Court gives great weight to the liquidated damages formula contained in the Agreement. *See* RESTATEMENT (SECOND) OF CONTRACTS § 356, cmt. b ("The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty, the easier it is to show that the amount fixed [in the contract] is reasonable."). Thus, the liquidated damages clause in the Membership Agreement is enforceable and Plaintiff is entitled to recover under that clause in conjunction with its claim for breach of contract for post-termination use of trademarks.

## CONCLUSION

Having reviewed Best Western's motion and supporting evidence, the Court concludes that Best Western has met its initial responsibility of demonstrating that summary judgment is appropriate with respect to counts one through three of its Complaint. Defendant has not met its burden of presenting specific facts showing that there is a genuine issue for trial with respect to these three counts.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 34) is **GRANTED.** Counts four through nine of Plaintiff's Complaint remain.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike is **GRANTED**. (Doc. 40).

**IT IS FURTHER ORDERED** that Defendant's Motion to Amend/Correct is **DENIED**. (Doc. 42).

DATED this 27th day of January, 2011.

_____
G. Murray Snow
United States District Judge

- 10 -